FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D. N.Y.

AUG 11 2015

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ERIK CORSE,

                              Petitioner,              11 CV 5371 (SJ)

                    - against -
                                            MEMORANDUM AND
                                                  ORDER

PHILIP HEATH, Superintendent,
Sing Sing Correctional Facility,

                              Respondent.
-------------------------------------------------------------X
A P P E A R A N C E S:

ERIK CORSE, *Pro Se*
DIN: 08-A-3950
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

MADELINE SINGAS, ESQ.
Nassau County District Attorney
262 Old Country Road
Mineola, NY 11501
By:    Jason Richards, Esq.
       Assistant District Attorney
Attorneys for Respondent

JOHNSON, Senior District Judge:

       Petitioner Erik Corse ("Corse") has petitioned this Court for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254 ("§ 2254"), challenging the conviction

and sentence imposed under Nassau County Indictment No. 2608N/06. The

petition can be construed as raising the following five claims under the Fifth, Sixth,

Eighth, and Fourteenth Amendments: (1) the Hearing Court erred in finding that a confidential informant was not acting as an agent of law enforcement when he obtained incriminating statements from Corse and in admitting those statements at trial; (2) the Trial Court erred in admitting into evidence out-of-court statements and other evidence related to three of the prosecution witnesses, along with certain records and images; (3) the verdict was against the weight of the evidence; (4) the sentence was excessive; and (5) appellate counsel was ineffective for raising certain claims and for failing to raise alternative claims. For the reasons stated below, the petition for habeas corpus is denied.

## BACKGROUND

### I.    Incident and Indictments

On October 21, 2006 at approximately 4:09 a.m., Hykiem Coney was shot and killed outside of a nightclub in Hempstead in Nassau County. After a police investigation, Corse was arrested on November 6, 2006. (Indictment No. 2608N/06 (ECF # 1-2, at 6-7).) On November 29, 2006, Corse and a co-defendant, Tyrel Cason, were indicted by a Nassau County grand jury on Nassau County Indictment No. 2608N/06 on charges related to the shooting. (Id.) Corse was charged with criminal possession of a weapon and hindering prosecution. (Id.) A superceding indictment numbered 1535N/07 was presented on July 6, 2007 and charged additional crimes against Corse and co-defendant Brandon Howard, related to the

2

possession and sale of firearms.[1] (Memorandum of Law in Support of Writ of Error *Coram Nobis* at 14 (ECF # 1, p. 42).)

## II.    Pre-Trial Suppression Motions

On November 7, 2007, Corse appeared with counsel Michael Sepe before Acting Supreme Court Justice Alan L. Honorof for a suppression hearing pursuant to Massiah v. United States, 377 U.S. 201 (1964). At this hearing, witness Goutson Glaudin testified that he had entered into a cooperation agreement with the Nassau County District Attorney's Office on May 19, 2005, at the time he pled guilty to a drug possession felony. (Nov. 7, 2007 Massiah Hearing Transcript ("Nov. 7, 2007 Tr.") at 27-28 (ECF # 15-3).) He testified that the agreement required him to seek approval from the agency for undercover work he might do involving cocaine. (Id. at 28.) He testified to entering into a second cooperation agreement on June 13, 2006, in which he was assigned to work with Nassau County Detective Willie Marrerro and Agent Alan Kashinsky from the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). (Id. at 29-31.) He testified that he understood that he was to seek approval from the detective or the ATF when he had information about potential criminal activity, and that he would then pose as a buyer for guns or drugs, at the direction of the police, and would wear a wire. (Id. at 88-89.)

Glaudin testified that he was subsequently arrested on November 26, 2006

---

[1] Tyrel Cason was tried separately under Indictment No. 2608N/06 and convicted of manslaughter in the second degree and weapons charges. (Resp.'s Aff., n.1 (ECF # 7, p. 6.)

3

in Suffolk County for possession of a firearm. (Id. at 33.) He testified that when police approached his home, he called Agent Kashinsky and "Allen [*sic*] told me to open the door and talk to them." (Id. at 97.) He testified that he gave the police permission to search the home, that they found a gun in his tenant's room, and that he, Glaudin, was arrested. (Id.) He acknowledged that he let the police into his home because of his conversation with Agent Kashinsky. (Id. at 99.)

He stated that when he was placed in the Suffolk County Correctional Facility in Riverhead on November 27, 2006, he saw Corse, whom he had known from high school. (Id. at 34.) He testified that they were housed in an open area, and that he was assigned to a bed next to Corse's bed. (Id. at 116.) Glaudin testified that on the second night that they were both incarcerated, November 28, 2006, Corse told him that he had passed a gun to his friend after a fight broke out at a club in Hempstead. (Id. at 37-38.) Glaudin said that Corse told him that "L-Murder had popped this dude." (Id. at 130.)

Glaudin testified that the next day, November 29, 2006, when Corse learned that Glaudin would be getting out of jail, Corse told him more details about the incident. (Id. at 138-40.) He testified that Corse asked him to retrieve some guns, including "the dirty one." (Id. at 38.) Glaudin testified that after this conversation, on the evening of November 29, he contacted Agent Kashinsky, by calling his girlfriend, who set up a three-way call with the agent. (Id. at 39-40, 109.) He

4

testified that he had been unable to contact the agent previously, because he was unable to set up a telephone account at the jail. (<u>Id.</u> at 107.) Glaudin testified that when he reached Agent Kashinsky, "I told him that I have something big, I need you to come see me." (<u>Id.</u> at 40.) He further testified that the next day, November 30, 2006, Agent Kashinsky and Detective Marrero came to the jail. (<u>Id.</u> at 41, 146.) Glaudin testified that in that initial conversation, he told the officers what he'd learned from Corse, and the officers expressed skepticism, but said they would find out if it was true or not. (<u>Id.</u> at 147.) He testified that they did not discuss the impact of his arrest on the cooperation agreement, nor whether the information he was finding out was "authorized" by law enforcement. (<u>Id.</u> at 147-49.) Glaudin testified that after the meeting with the officers, he did not have any further conversations with Corse about the guns while they were both in jail. (<u>Id.</u> at 165-66.)

Agent Kashinsky also testified at the <u>Massiah</u> hearing. Kashinsky described his 17 years as an ATF agent and his use of confidential informants. (<u>Id.</u> at 183-84.) He stated that he first met Goutson Glaudin in or around June 2006 when he was notified by the Nassau County District Attorney's Office that he could utilize Glaudin as a confidential informant. (<u>Id.</u> at 185.) He testified that he instructed Glaudin to contact him regarding any information he had and that he told him not to purchase any evidence or make tape recordings without the agent's

5

participation. (Id. at 186; 214.) He stated that he instructed Glaudin that if he was arrested he should not tell the police that he was an informant but should wait to contact him surreptitiously. (Id. at 187.) He stated that he did not give Glaudin any instructions on what to do if he was incarcerated. (Id.) Kashinsky confirmed that Glaudin called him on November 26, 2006 when the police were outside of Glaudin's home. (Id. at 189-90.) Kashinsky stated that he told Glaudin that if he didn't do anything wrong he should let the police inside. (Id. at 242-43.) He testified that he subsequently learned from a Suffolk County detective that Glaudin had been arrested for a firearm. (Id. at 190.) He further testified that when Glaudin first told him about his conversation with Corse, Kashinsky did not initially believe Glaudin's story. (Id. at 194.)

At that same hearing, Nassau County Assistant District Attorney and Deputy Chief of the Street Narcotics and Gangs Bureau Grace Cucchissi also testified about her work with Glaudin. (Id. at 268-276.)

At the conclusion of the hearing, Defense Counsel Sepe argued that the statements were obtained from Corse "by a public servant engaged in law enforcement activity, or by a person then acting under his direction . . . or in cooperation with him." (Id. at 328-29.) He argued that the existing open cooperation agreements were sufficient to make Glaudin an agent of law enforcement. (Id. at 335.) The People argued that Glaudin was not an agent, and

6

that even if he was an agent, the statements did not violate the Sixth Amendment, because neither the government nor the confidential informant orchestrated receipt of the information. (Id. at 373.) The hearing court held that Glaudin, despite the existence of the cooperation agreements, "was not at that time under instructions to pursue, nor pursuing, any authorized venture for which he had received the required necessary preauthorization from any authority," and thus was not working as an agent of law enforcement. (Id. at 377.) Since the right to counsel did not attach, the court held that statements Corse made to Glaudin November 27-December 1, 2006 were admissible. (Id. at 378.)

On March 13, 2008, immediately prior to the commencement of trial, the trial court heard argument about the admission of the recorded conversations between Goutson Glaudin and Brandon Howard. (ECF # 1 at 42; Resp.'s Aff. ¶ 8 (ECF # 7 at 6).) The People argued that the conversations were admissible because (1) they were a demonstrative aid to the jury; (2) they spoke to the credibility of witnesses; (3) they had "probative value of showing what existed at the time it occurred"; (4) they provided "separate evidence . . . of the defendant's commission of a crime"; and (5) they fall into exceptions to the hearsay rule for (a) statements made in furtherance of a conspiracy and (b) being offered as completeness, not for the truth of the matter. (Transcript of Preliminary Matters, March 13-17, 2008 ("Mar. 13-17, 2008 Hearing Tr.") at 4-5, 8 (ECF # 15-5).) Defense Counsel John R. Lewis, Jr. argued that the recordings should not be admitted because both of the

7

individuals caught on the tape would be testifying at trial, so thus the only purpose for admitting the tapes was as prior consistent statements used to bolster the witnesses' credibility. (Id. at 10-11, 14-15, 36.) The court permitted the introduction of the recordings, subject to defense objections to select portions. (Id. at 16.) Thereafter, Defense Counsel argued that portions of the recorded conversations that were not specifically statements in furtherance of the conspiracy should be excluded, including references to hiring a lawyer, defendant's reaction to his detention and the charges against him, and Glaudin's claim of innocence on his own gun charges. (Id. at 25, 27, 32, 34-36.) The court admitted most of the contested portions, without explanation, and over counsel's "strenuous exception." (Id. at 28-31, 36-37.)

At a preliminary hearing on March 17, 2008, the People stated that they had turned over to Defense Counsel certain materials, including "the stills that were specifically made from the video and a power point of stills" related to the October 21, 2006 incident. (Id. at 63.)

### III.    Trial

Voir dire began on March 31, 2008, with the reading of Indictment Number 1535N/07 charging the defendant with criminal possession of a weapon in the second degree, in violation of section 265.03(1)(b); criminal possession of a weapon in the third degree, in violation of section 265.02(4); hindering prosecution in the first degree, in violation of section 205.65; criminal facilitation in the second

8

degree, in violation of section 115.05; criminal sale of a firearm in the third degree, in violation of section 265.11(1) (two counts); criminal sale of a firearm in the third degree, in violation of section 265.11(2) (two counts); criminal sale of a controlled firearm in the third degree, in violation of section 110/265.11(1) (two counts); and criminal possession of a weapon in the second degree, in violation of section 265.03(3) (two counts). (Transcript of Proceedings from March 31 - April 18, 2008 ("Trial Tr.") at 10-14 (ECF # 15-7).)

The People, represented by Assistant District Attorney ("ADA") Meg Reiss, presented evidence from police officers about the homicide on October 21, 2006, the scene of the crime, and the subsequent investigation. (Trial Tr. at 331-42; 347-442 ). In addition to the officers' testimony, the evidence included still images and moving images from security cameras near the scene, shell casings, crime scene photographs, a map, and a bullet. (Trial Tr. at 369-71, 378, 389-95, 397, 410, 423.) A civilian witness, Shanay Lewis, testified that she had socialized with Erik Corse and Tyrel Cason prior to the shooting and that she heard 4-5 gunshots. (Trial Tr. at 458, 442-79.)

The People called Carlton Alexander as a witness. Alexander told the jury that he had been convicted of previous crimes, including weapons possession, reckless driving, assault, and driving while under the influence, and that he was out on parole at the time of the homicide. (Trial Tr. at 513, 533-37, 614-15, 638.) Then he testified to the events of the early morning of October 21, 2006. He

9

acknowledged drinking multiple alcoholic beverages. (Trial Tr. at 540, 545, 549-50.) He testified that he saw Tyrel Cason give a gun to Corse at Corse's house (Trial Tr. at 542); later saw Corse return to the house, retrieve the gun and give it to Cason while he was sitting in the car (Trial Tr. at 545-46); and saw Corse give Cason the gun while they were standing outside of the Image bar (Trial Tr. at 553-54). He testified that he saw Cason shooting the gun toward a crowd of people, with Corse standing next to him. (Trial Tr. at 559.) Alexander further testified that he was arrested on November 7, 2006 when he went to report to his parole officer. (Trial Tr. at 564.) He testified that he did not initially tell the detectives what happened on October 21, 2006, but then his mother and step-father, a corrections officer and police officer, respectively, came to the precinct. (Trial Tr. at 566.) "[T]hat's when I basically changed my mind and told them everything that happened that night." (Id.) He subsequently gave a statement to the District Attorney's office that was videotaped. (Trial Tr. at 567.) Alexander acknowledged that he did not give Corse's name when he first related the incident to Detective Brosnan. (Trial Tr. at 570, 715.) "I didn't bring Erik's name up at the time at the Homicide Squad, because his name wasn't coming up to begin with. And on November 21st, when I testified at the grand jury, that's when – that was at the time that he was arrested, so I felt more comfortable, like, bringing out the whole story." (Id.)

On cross examination, Defense Counsel attempted to impeach Alexander

10

with prior inconsistent statements he made during questioning at the precinct on November 7, 2007 and at Cason's trial. (Trial Tr. at 611-13, 620, 631-60, 692-93.) He also got Alexander to acknowledge that he was intoxicated at the time of the incident. (Trial Tr. at 649.) The People then sought to rehabilitate the witness using prior consistent statements, over Defense Counsel's objection. (Trial Tr. at 730-32.)

The ADA also asked to call a new witness, Carl Hewitt, whose name had been given to Defense Counsel only the previous day. (Trial Tr. at 701.) The ADA described him as "a witness that we had become aware of that I wanted to put him on notice that relates to the murder weapon, the .380 semi-automatic, that I did not want to disclose the name as of Thursday, because we just became aware of him and we were speaking to him the first time on Thursday, and if it turned out it he didn't have relevant information I didn't want his name to be out there." (Trial Tr. at 701.) Defense Counsel objected, saying "If I had known about this witness, my investigator could have looked into the facts and circumstances of what he is testifying to, his backgound and history. I may have opened on it, I might have taken a different tactic about this. To say they just knew about it, they knew him from B-Easy, from day one who this person was. It's an unfair surprise on the defendant and I object." (Trial Tr. at 701-02.) The People argued that a witness list is not statutorily required. (Trial Tr. at 702.) The court allowed the witness to testify. (Trial Tr. at 703.) Defense Counsel requested an adjournment. (Trial Tr.

11

at 797.) The court denied the request, but gave Counsel the option to recall the witness later if a background investigation opened up additional avenues that he wanted to pursue. (Trial Tr. at 798.)

Hewitt testified to buying a .380 caliber black and silver handgun in late October, 2006 from an individual he later learned was named Brandon. (Trial Tr. at 802-03, 811.) He testified that he met with ADA Reiss, identified Brandon from a photographic array, and spoke to her about the case on Thursday, April 3, 2008. (Trial Tr. at 805-07.) Defense Counsel requested a sidebar and made an on-the-record objection that the prosecutor had known about the witness's testimony on Thursday and had represented that she didn't know whether he had pertinent information. (Trial Tr. at 808.) Counsel did not receive Hewitt's name until the day before he was called and did not get his rap sheet until the day he was called to the stand. (Id.) He objected: "Judge, this is totally unfair. That's trial by surprise." (Id.) When Counsel asked Hewitt about the charges he was facing in Kings County, the court excused the witness to be recalled after the indictment was available. (Trial Tr. at 817.) After the witness was excused, the court commented in front of the jury: "Shakespeare called it much ado about nothing." (Trial Tr. at 819.) Counsel later objected, saying: "by your comment, . . . by saying, it's much ado about nothing, after a 45-minute break and then I get up and ask one question, there is an implication." (Trial Tr. at 825.)

Detective William Brosnan of the Nassau County Police Department

12

testified to his investigation of the homicide. During "further redirect examination," ADA Reiss gave him a copy of Carlton Alexander's November 7, 2006 statement, which had previously been admitted into evidence, and asked the witness to read from it. (Trial Tr. at 899.) Counsel objected, on the ground that the document was already in evidence. (Tr. at 899.) The court stated: "Anyone can read from a document in evidence." (Id.) Detective Brosnan read: "I could see Roach and El standing across the street. The next thing I hear is gunshots coming from where Roach and El were." (Trial Tr. at 900.)

The People called Sergeant Joseph O'Malley to introduce records from the Suffolk County facility, showing that Corse and Glaudin were assigned adjoining beds. (Trial Tr. at 907-09.) Then the People introduced telephone records from the facility, Rikers Island visitor records for Carl Hewitt, and still images of the gun transaction between Glaudin and Howard, that were taken from a different angle than the video. Defense Counsel objected to the admission of this evidence because, he claimed, the records had not previously been produced in discovery and were not turned over to the Defense until the day before they were introduced at the trial. (Trial Tr. at 910-11, 937, 962.) The court gave the same remedy as for late disclosure of an additional witness: the records were admitted and Counsel had the opportunity to cross-examine the witnesses about them; then, after investigation, if he wanted to ask additional questions, the witnesses would be recalled and Counsel would be allowed to reopen his cross-examination. (Trial Tr.

13

at 911, 940.) Counsel explained that the offered remedy of reopening testimony after he'd had a chance to review the records and photographs was insufficient, stating that if he'd been aware of the evidence, "I might have had a different strategy." (Trial Tr. at 961.) His further objections were overruled. As to the admission of the still images of the gun transaction, the ADA argued that it didn't matter, because the stills were of the same images as the videos, but from a different angle, and the court held that "whether you got it or you didn't get it, there is no prejudice." (Trial Tr. at 1021-22.)

Glaudin testified that he met Corse, whom he'd known in high school, in the jail on November 27, 2006 and started talking to him. (Trial Tr. at 991.) He testified that the next day, November 28, he overheard Corse yelling on the phone and talking about his case. (Trial Tr. at 993.) Thereafter, he testified, they started talking about the charges Corse was facing. (Trial Tr. at 994-95.) Glaudin stated that the day after that, November 29, Corse shared additional details about his case, including that "he still got the gun, the .380, and he want me to get three other guns to sell." (Trial Tr. at 995-96, 999.) It was that day, he testified, that he called Agent Kashinsky and asked the ATF agent to meet him, because "I have something big." (Trial Tr. at 998.) He testified that Kashinsky did eventually meet with him, on November 30, that they talked about the Hempstead murder and Corse's request that Glaudin help him sell the guns. (Trial Tr. at 1002-03.)

Glaudin further testified that when he got out of jail on December 1, 2006,

14

he met with Kashinsky and they arranged a meeting with the person Glaudin knew

as B Easy to get the guns Corse asked Glaudin to sell. (Trial Tr. at 1010-11.)

Glaudin testified that he wore a wire to meet up with B Easy on December 2, 2006.

(Trial Tr. at 1013.) At that time during his testimony, ADA Reiss moved the audio

CD with the redacted recorded conversation between Glaudin and Brendan Howard

into evidence. (Trial Tr. at 1016-17.) The tape was played while the jury followed

along on transcripts that were provided to them. (Trial Tr. at 1018-20.) The still

photographs from the encounter were entered into evidence, over Counsel's

objection, and Glaudin used them as a visual aid during his testimony. (Trial Tr. at

1021, 1023-27.) Glaudin testified that B Easy gave him the guns on December 2,

2006, and that they met again on December 6, when B Easy gave him the money.

(Trial Tr. at 1029, 1035.) The recording of that conversation was moved into

evidence during Glaudin's testimony. (Trial Tr. at 1034-35.) The tape was played,

while the jury followed along on transcripts. (Trial Tr. at 1039.) The court

reminded the jury, at Counsel's request, that the transcript was merely an aid, and

was not in evidence. (Trial Tr. at 1052.) Counsel objected to ADA Reiss stopping

the tape and replaying it to go over explanations, such as what the "dirty one"

meant, as an "attempt to repeat the prior consistent statement of what he testified

on the stand," which he described as "bolstering of his testimony." (Trial Tr. at

1057.) He also objected to references to the shooting and to drug "fiends" with

whom Corse was said to associate. (Trial Tr. at 1067, 1080.) At the conclusion of

15

Glaudin's direct testimony, Counsel renewed his objection to admission of the recordings and testimony about Howard's statements during the gun sales on the grounds that the conversations were inadmissible hearsay, they touched on information that was not relevant to the gun charges in which Howard was involved, and they implicated his client in other activity. (Trial Tr. at 1080-92.) His objections were overruled. (Trial Tr. at 1058-59, 1092.) His request for a curative instruction was not entertained until the court charged the jury. (Trial Tr. at 1092, 1708-1709.)

On cross-examination, Defense Counsel questioned Glaudin about his cooperation agreements, his violations of them, his incentive to make cases, and the money he was paid for working undercover. (Trial Tr. at 1123-1147, 1121.) He highlighted inconsistencies in Glaudin's testimony at different proceedings. (Trial Tr. at 1152-69.) He caught Glaudin in false testimony about his prior crimes, in which Glaudin initially testified that he had not committed any crimes other than the ones for which he was arrested; then, later, he acknowledged that he had sold drugs and guns. (Trial Tr. at 1140, 1190-93.) On several occasions, Glaudin took the Fifth Amendment and declined to answer questions. (Trial Tr. at 1148-50, 1212-13.)

Next, the People called Agent Kashinsky and Detective Marrero. Kashinksy testified to Glaudin's status as a confidential informant, Glaudin's calls on November 26 and November 29, 2006, meeting with him at the Riverhead Jail

16

on November 30, 2006, setting up the December 2 and December 6, 2006 meetings between Glaudin and Howard, and recovering the firearms. (Trial Tr. at 1245-1293.) Kashinsky also testified about his arrest of Brandon Howard in July, 2007. (Trial Tr. at 1300.) Detective Marrero testified to his working relationship with Glaudin and the operation on December 2, 2006 in which some firearms were recovered. (Trial Tr. at 1329-33.) The People also called ADA Teresa Corrigan, who testified to the details of Glaudin's cooperation agreements (Trial Tr. at 1358-1370), and Stephen Bux, a retail client manager at Bank of America, who described the financing for Corse's car, showing inconsistent payments made during 2006 (Trial Tr. at 1388-1393). The pathologist, Gerard Catanese described the homicide victim and the two gunshot wounds to the head and flank. (Trial Tr. at 1397-1412.)

At the conclusion of the People's case, the Defense made a motion for judgment of acquittal. (Trial Tr. at 1413.) Counsel argued that, as to the first count of the indictment, there was no evidence that Corse possessed a gun, the .380 automatic that was used in the shooting, with the intent to use it unlawfully, because Corse did not know that Cason intended to shoot anybody. (Trial Tr. at 1413.) He also asked the court to find, as a matter of law, that the credibility of the People's witnesses was so impaired as to be inadmissible. (Trial Tr. at 1414.) The motion was denied without explanation. (Trial Tr. at 1414.)

The Defense case included the testimony of Detective Robert Brzeski, who answered questions about his interview on November 21, 2006 with Carlton

17

Alexander (Trial Tr. at 1427-32), a stipulation about additional testimony from Alexander's parole officer (Trial Tr. at 1433-34), and the admission of Corse's bank account records (Trial Tr. at 1433-46).

In summation, Defense Counsel attacked the credibility of the prosecution's witnesses. He described the variations in the different versions of the accounts Carlton Alexander gave to law enforcement (Trial Tr. at 1494-1510) and highlighted his criminal history and potential personal benefit from his testimony (Trial Tr. at 1510-13). Defense Counsel argued to the jury that there was no credible evidence that Corse passed Cason the gun. (Trial Tr. at 1521.) He questioned Glaudin's veracity by describing his testimony in which he admitted lying as part of "playing a role" (Trial Tr. at 1543) and brought out inconsistencies in the sworn testimony he gave in different proceedings (Trial Tr. at 1546-1551, 1574, 1576-77). He suggested that Glaudin's cooperation agreements and criminal history gave him incentives to lie about Corse's involvement (Trial Tr. at 1552-54, 1564, 1569) and that his testimony didn't make logical sense (Trial Tr. at 1554-61).

After closing arguments and prior to charging the jury, the trial court indicated that it had received a note from one of the jurors. (Trial Tr. at 1657.) He stated: "I am just letting you know that this note will be answered during the course of my charge." (Id.) The substance of the note was not revealed on the record.

At the conclusion of the jury charge and after a request from Defense Counsel, the court included an instruction that evidence of other uncharged crimes

18

was not to be considered for the purpose of proving that the defendant had a propensity to commit the charged crimes. (Trial Tr. at 1708-09.)

During deliberations, the jury sent a note asking to see or hear the elements of each of the counts, subsequently clarified as counts 5-8, related to the intent to sale versus the sale, exchange, or disposal of two different weapons. (Trial Tr. at 1713, 1720-21.) The court read the note aloud in the presence of the defendant, counsel for defendant and the People, and the jury; consulted with counsel off the record; and reread the charges on counts 5-8 and summarized the difference as "the intent to sell." (Trial Tr. at 1713, 1720-21, 1723.)

The jury acquitted Corse on Count 1 and found him guilty on the remaining charges. (Trial Tr. at 1741-43.)

At sentencing, the Defense renewed its application to set aside the verdict as against the weight of the evidence, and the motion was denied without comment. (Sentencing Tr. at 2-3 (ECF # 15-6).) Defendant was sentenced to multiple concurrent and consecutive terms, with a total incarceratory sentence of 14-17 years, along with 3 years of post-release supervision. (Sentencing Tr. at 13-15.)

## IV.   Post-Conviction Proceedings

Corse appealed his conviction and sentence to the Appellate Division, Second Department in May, 2009, raising four issues: (1) the Hearing Court erred in finding that Glaudin was not acting as an agent of law enforcement when he allegedly obtained incriminating statements from Corse, in violation of Corse's

19

right to counsel and right against self-incrimination; (2) the Trial Court erred in admitting into evidence (a) taped conversations between Corse and Glaudin, (b) out-of-court statements by witness Carlton Alexander, (c) evidence related to witness Carl Hewitt, and (d) telephone records, visitor records, and still images from video obtained from Suffolk County Correctional Facility and Rikers Island; (3) the verdict was against the weight of the evidence; and (4) the sentence was excessive. (Corse's Brief for Defendant-Appellant, dated May, 2009 (ECF Entry # 15-20).) On November 23, 2009, Corse submitted a supplemental *pro se* brief in which he argued that (5) the prosecutor knowingly introduced false testimony by calling Carlton Alexander to testify at trial, eliciting his testimony that he received no promise in exchange for his statements about Corse, and mischaracterizing that testimony during summation. (Corse's Supplemental Brief of Appellant dated Nov. 23, 2009 (ECF Entry # 15-31).)

The Appellate Division affirmed the conviction on May 25, 2010. It held that the confidential informant's prior cooperation agreement did not make him an agent of law enforcement in the subsequent interaction with Corse, where the confidential informant "acted independently and on his own initiative," and "[t]he prosecution was a passive recipient of the information." People v. Corse, 73 A.D.3d 1208, 1209, 902 N.Y.S.2d 599, 600 (2d Dep't 2010), citing People v. Cardona, 41 N.Y.2d 333, 335, 360 N.E.2d 1306 (1977) ("[I]t has been held that where an informer works independently of the prosecution, provides information

20

on his own initiative, and the government's role is limited to the passive receipt of such information, the informer is not, as a matter of law, an agent of the government.")

The Appellate Division also found that the evidence "was legally sufficient to prove the defendant's guilt beyond a reasonable doubt" and that it was "satisfied that the verdict of guilt was not against the weight of the evidence." Corse, 73 A.D.3d at 1209, citing People v. Danielson, 9 N.Y.3d 342, 880 N.E.2d 1 (2007) and People v. Romero, 7 N.Y.3d 633, 859 N.E.2d 902 (2006). It added: "Contrary to the defendant's contention, the jury could reasonably find that the testimony of certain witnesses was not incredible or unreliable." Corse, 73 A.D.3d at 1209. It further found that the sentence was not excessive. Id., citing People v. Suitte, 90 A.D.2d 80, 455 N.Y.S.2d 675 (1982). The Appellate Division stated that the contentions raised in Corse's supplemental *pro se* brief and Point II(a)(2) of the original brief, related to the reading of witness Alexander's prior statement, were unpreserved for appellate review and that the remaining contentions were without merit. The New York Court of Appeals denied leave to appeal on September 2, 2010. People v. Corse, 15 N.Y.3d 850, 935 N.E.2d 819, 909 N.Y.S.2d 27 (2010).

Corse filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10, dated March 16, 2009, before he perfected his appeal. That motion alleged that (1) the trial court lacked jurisdiction because the indictment was procured under circumstances in which the grand jury was not

21

given all of the information about the cooperation agreements and promises made

to several of the witnesses who appeared before it; (2) the superceding indictment

was procured without seeking permission from the court; (3) the prosecution

knowingly presented false testimony from multiple witnesses; and (4) the imposed

sentence was premised on a different version of the penal law under which Corse

was charged and convicted. The trial court, Justice Honorof, denied the motion on

August 6, 2009. (See Amended Motion Pursuant to CPL § 440.30, dated April 9,

2009 ( ECF Entry # 15-16); Affirmation in Opposition to Defendant's Pro Se

Motion to Vacate the Judgment and/or Set Aside Sentence, dated May 27, 2009

(ECF Entry # 15-19); Aug. 6, 2009 Order on Motion to Vacate (ECF Entry # 15-

25).)

Thereafter, Corse filed an application for a writ of error *coram nobis* on

October 6, 2011, alleging that appellate counsel was ineffective for failing to raise

the following additional claims on appeal: issues related to the Grand Jury

proceedings and indictments; the admission of evidence of uncharged crimes,

allegedly in violation of Molineux; and the court's handling of jury notes during

deliberations. The Appellate Division denied the motion on April 10, 2012.

People v. Corse, 94 A.D.3d 906, 941 N.Y.S.2d 890 (2d Dep't 2012). The Court of

Appeals denied leave to appeal on June 22, 2012. People v. Corse, 19 N.Y. 3d 959,

973 N.E.2d 209, 950 N.Y.S.2d 111 (2012). Corse filed a subsequent application

for a writ of error *coram nobis*, on the ground of ineffective assistance of appellate

22

counsel, which was denied on December 18, 2013. <u>People v. Corse</u>, 112 A.D.3d

843, 976 N.Y.S.2d 669 (2d Dep't 2013). The Court of Appeals again denied leave

to appeal on April 14, 2014. <u>People v. Corse</u>, 22 N.Y.3d 1198, 986 N.Y.S.2d 418,

N.E.3d 913 (2014).

## V.     The Instant Petition

Corse's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

relies on arguments he'd previously raised in state court. He raises the same four

claims raised in his appellate brief, along with the argument he advanced in his

October 6, 2011 state application for a writ of error *coram nobis*. These claims

appear to allege the following federal constitutional claims: (1) Corse's Fifth and

Sixth Amendment rights were violated when a confidential informant spoke to him

about his involvement in the shooting, without his attorney present, when the

informant was allegedly acting as an agent of the government, and the informant

was permitted to testify to these conversations at trial; (2) the Trial Court erred in

admitting into evidence out-of-court statements and other evidence related to three

of the prosecution witnesses, along with certain records and images, in violation of

Corse's Fourteenth Amendment right to due process; (3) the verdict was against the

weight of the evidence, also implicating his right to due process; (4) the sentence

was excessive, in violation of the Eighth Amendment; and (5) Corse was deprived

of his Sixth Amendment right to counsel because appellate counsel was ineffective

for raising certain claims and for failing to raise alternative claims.

23

## DISCUSSION

### I. Procedural Issues

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
codified a series of procedural requirements for the filing of an application for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in custody pursuant
to a State court judgment.

#### A. Timeliness

The first inquiry is whether the petition is timely under AEDPA's one-year
statute of limitations for filing a petition. In most cases, the limitations period runs
from "the date on which judgment became final by the conclusion of direct review
or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).
A conviction becomes "final" when the Supreme Court "affirms a conviction on
the merits on direct review or denies a petition for a writ of certiorari, or when the
time for filing a certiorari petition expires." Clay v. United States, 537 U.S. 522,
527 (2003). The limitations period may also be subject to statutory or equitable
tolling. 28 U.S.C. § 2244(d)(2); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.) (per
curiam), cert. denied, 531 U.S. 840 (2000). In this case, since Corse did not seek a
writ of certiorari in the United States Supreme Court, the conviction became final
on December 1, 2010, 90 days after the New York Court of Appeals denied leave
to appeal on September 2, 2010. Accordingly, the statute of limitations would run
until December 1, 2011. Corse filed the instant habeas petition on October 6, 2011,

24

before the limitations period had expired.

## B. Exhaustion

The AEDPA also requires that a petitioner exhaust each claim he wishes to raise in federal court by first seeking remedies that may be available in the courts of the state in which he was convicted or demonstrate that "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. 2254(b)(1)(B). The exhaustion requirement mandates that the petitioner "fairly present" both the factual and legal premises of his federal claims to the highest state court. Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also Jones v. Keane, 329 F.3d 290, 294-295 (2d Cir. 2003).

Corse raised his first four claims in his direct appeal, and thus they were properly exhausted at the time he filed the instant petition. Although it was not exhausted at the time the petition was filed, Corse's remaining claim, alleging the ineffectiveness of appellate counsel, was raised in his second application for a writ of error coram nobis, which was decided on December 18, 2013, and leave to appeal was denied on April 14, 2014.

## C. Procedural Bar – Independent and Adequate State Grounds

Federal courts conducting habeas corpus review may not consider the merits of federal constitutional claims when a state court has already found those claims to be procedurally barred by "a state law ground that is *independent* of the

25

federal question and *adequate* to support the judgment." Coleman v. Thompson,

501 U.S. 722, 729 (1991) (emphasis added). Exceptions to this procedural default

may arise if the petitioner can make a showing of cause for the default and

resulting prejudice, see Wainwright v. Sykes, 433 U.S. 72, 87 (1977), or can

"demonstrat[e] a constitutional violation that resulted in a fundamental miscarriage

of justice, i.e., that he is actually innocent of the crime for which he has been

convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002). The Appellate

Division found that Corse's claims related to the admission of Carlton Alexander's

testimony was unpreserved for appellate review. Corse's other claims were

considered on their merits.

## II. Standard of Review

Under 28 U.S.C. § 2254, as amended by AEDPA, an application for a writ

of habeas corpus by a person in custody pursuant to a state court judgment may

only be brought on the ground that his or her custody is "in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A

petitioner is required to show that the state court decision, having been adjudicated

on the merits, is either "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United

States," or "based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For the purposes of federal habeas review, "clearly established law" is

26

defined as "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different from that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule, but unreasonably applies it to the facts of the petitioner's case. <u>Id.</u> at 412-13. In order to establish that a state court decision is based on an "unreasonable application" of the law, the state court decision must be "more than incorrect or erroneous"; it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003). Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. <u>Admission of Witness Goutson Glaudin's Testimony</u>

Point One of the instant petition alleges that Corse's Fifth and Sixth Amendment rights were violated by the admission at trial of witness Goutson Glaudin's testimony, which included the inculpatory statements Corse made to Glaudin while they were both detained at the Suffolk County Correctional Facility. Corse argued at the November 2007 <u>Massiah</u> hearing and on direct appeal that Glaudin was acting as an agent and under the direction of law enforcement officers

27

when Glaudin obtained inculpatory statements from Corse. This claim is properly exhausted.

### A. Established Federal Law

Once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings, including when questioned by law enforcement. Montejo v. Louisiana, 556 U.S. 778, 786 (2009). In Massiah v. United States, the Supreme Court held that once a defendant's Sixth Amendment right to counsel attaches, the government may not "deliberately elicit[]" inculpatory information from the defendant "in the absence of counsel," and explicitly applied this prohibition to the use of undercover agents or government informants for the purpose of obtaining inculpatory statements. 377 U.S. at 206-07 ("The Sixth Amendment is not violated whenever – by luck or happenstance – the State obtains incriminating statements from the accused after the right to counsel has attached."). The Second Circuit has held that the Massiah rule "covers only those statements obtained as a result of an intentional effort on the part of the government, so information gotten before the inmates become agents/informants is not protected by the rule." United States v. Stevens, 83 F.3d 60, 64 (2d Cir. 1996). Maine v. Moulton, 474 U.S. 159, 176 (1985) (citation omitted). Massiah does not apply to exclude statements made completely voluntarily by an accused. Thus, in the case of an undercover informant, the relevant distinction is whether law enforcement

28

agents deliberately elicit the information, or are passive recipients.

The Fifth Amendment includes a privilege against self-incrimination. It protects against the admission of incriminating statements made by a suspect during "custodial interrogation . . . unless it demonstrates the use of procedural safeguards." Miranda v. Arizona, 384 U.S. 436, 444 (1966). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. "Conversations between suspects and undercover agents do not implicate the concerns underlying Miranda. The essential ingredients of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect. Illinois v. Perkins, 496 U.S. 292, 296 (1990) (citations omitted).

### B. State Court Holdings

The state courts considered and rejected this claim on the merits. The hearing court conducted an extensive Massiah hearing prior to trial and found that Glaudin was not working as an agent of law enforcement, because he was not under instructions to pursue, nor had been authorized to pursue information. (Hearing Tr. at 377.) Accordingly, the hearing officer found that the right to counsel did not attach during the jailhouse conversation. (Id. at 378.) On appeal, the appellate

29

court held: "The informant acted independently and on his own initiative. The prosecution was a passive recipient of the information." Corse, 73 A.D.3d at 1209. Accordingly, it found, the hearing court properly denied Corse's motion to suppress those statements.

### C. Analysis

Having reviewed the state court record and the appellate division's May 25, 2010 affirmation of the judgment, this Court finds that the state court's findings are neither contrary to clearly established Federal law, nor based on an unreasonable determination of the facts. The record indicates that Glaudin's conversations with Corse were not initiated by law enforcement officers, that Glaudin's handler, Agent Kashinsky, was unaware of the conversations until after Glaudin's initial telephone conversation with Kashinsky on November 29, 2006, and that Glaudin did not give a detailed report about the conversations until Kashinsky and Glaudin met in person on November 30. After that meeting, Glaudin did not elicit any further incriminating statements. The state court found that Glaudin was not acting under the instructions or authorization of law enforcement. This Court finds that the hearing court and the appellate court followed clearly established federal law and reasonably applied it to the facts in finding that the statements and testimony were admissible. The conversations were not initiated by an agent for the government, nor did they count as "custodial interrogation." Thus, admission of the statements did not violate Corse's rights under the Fifth or Sixth Amendments. Accordingly,

30

there is no ground for habeas relief on Point One.

## IV. **Admission of Additional Contested Evidence**

Corse's second claim is the same as Point Two of his Appellate brief, in which he alleged that the trial court made additional errors in the admission of specific evidence against him, including playing recorded conversations of witness Glaudin; allowing another witness to read portions of a prior statement by Carlton Alexander, after Alexander had testified and the statement had been admitted into evidence; admitting the testimony of witness Carl Hewitt; and admitting telephone records from the Suffolk County Correctional Facility, visitor records from Rikers Island, and certain still photographs from the gun transaction between Glaudin and Brandon Howard that were not disclosed to the Defense until after trial had commenced.

Corse's claim that the trial court erred in allowing Detective William Brosnan to read Alexander's prior statement is procedurally barred from federal court review. Corse raised this claim in his direct appeal, where the Appellate Division found it to be procedurally barred under New York state law because it was unpreserved for appellate review. Corse, 73 A.D.3d at 1209. Failure to comply with New York's contemporaneous objection rule is an independent and adequate state ground barring appellate review. Gutierrez v. Smith, 702 F.3d 103, 110 (2d Cir. 2012). Although Defense Counsel objected to the detective reading Alexander's statement on the ground that the document was already in evidence, he

31

did not specifically object that the reading improperly bolstered Alexander's testimony. Thus, this claim is procedurally barred from federal habeas review. Corse does not present any cause for his default, nor demonstrate that a "fundamental miscarriage of justice" will result from the "failure to consider the federal claim." Harris v. Reed, 489 U.S. 255, 262 (1989). Accordingly, the Court cannot consider Corse's claim related to the reading of Alexander's testimony. The remaining evidentiary decisions Corse challenges here were properly objected to at trial, were raised on appeal, and were denied as without merit. Accordingly, the following claims are properly exhausted.

Claims alleging violations of state evidentiary rules are not generally cognizable in federal habeas review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). "Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983). The question is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been 'crucial, critical, highly

significant.'" Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985), quoting Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir. 1982).

Corse argues that the admission of the recorded conversations between Glaudin and Brandon Howard was impermissible bolstering of Glaudin's credibility. The trial court rejected Defense Counsel's bolstering argument and admitted the contested portions of the recordings. Bolstering involves "the fortification of a witness's testimony and credibility through the use of a prior consistent statement." People v. Buie, 86 N.Y.2d 501, 510, 634 N.Y.S.2d 415, 658 N.E.2d 192 (1995) ("Such evidence may be admissible, but only to rebut a claim of recent fabrication.") However, even if the bolstering at Corse's trial exceeded the exception to the rule against hearsay permissible under state law, "the overwhelming weight of federal authority in this Circuit holds that 'bolstering' of a prosecution witness's testimony does not state a constitutional claim redressable on federal habeas review." Glover v. Burge, 652 F. Supp. 2d 373, 377 (W.D.N.Y. 2009) (collecting cases). For a state court's erroneous evidentiary rule to be cognizable on habeas review, it must be "so egregious as to implicate the Fourteenth Amendment's guarantee of due process" and the petitioner "must identify a Supreme Court case that clearly establishes that the admission of evidence that improperly bolsters a prosecution witness's testimony constitutes a violation of the Fourteenth Amendment." Evans v. Fischer, 712 F.3d 125, 133 (2d Cir. 2013) (finding no Supreme Court case requiring such a conclusion).

33

Corse also argues that the trial court erred in permitting witness Carl Hewitt to testify when his appearance was only disclosed after the commencement of trial, and in admitting telephone and visitor records and still photographs that had not been previously disclosed to the defense. New York's Criminal Procedure Law § 240.20 provides for disclosure of certain evidence, and C.P.L. § 240.70 permits the trial court to choose an appropriate remedy for a party's failure to comply with the notice requirements. When Defense Counsel raised contemporaneous objections to the late disclosures at trial, the trial court permitted the testimony and evidence and offered the defense additional time to prepare or to recall witnesses for further cross-examination. Corse now argues that the degree of prejudice from the late notice and disclosures was not mitigated by the trial court's offers, because Defense Counsel was unable to adapt his trial strategy and opening statements to the additional testimony and evidence.

The Appellate Division found no error in the trial court's evidentiary determinations, as it denied Corse's remaining claims as without merit. However, even if the evidentiary rulings were in error under state law, they did not deprive Corse of a fundamentally fair trial. Glaudin and Alexander both testified at trial about the conversations and statements, and the potential bolstering effect of also admitting the recorded conversation and prior statement was minimal. Defense Counsel had ample opportunity to cross-examine the witnesses. After the Defense finally received delayed copies of the telephone records, visitor records, and the

34

contested still photographs, Counsel was provided opportunities to reopen

testimony on those issues. Corse has failed to demonstrate any prejudice from late

disclosures. As none of this evidence was "crucial, critical, [or] highly significant,"

so as to deny Corse a fundamentally fair trial, these claims cannot serve as the basis

for habeas relief.

## V.    The Sufficiency of the Evidence

Point Three in the Petition challenges Corse's conviction on the ground of

insufficiency of the evidence. Corse argues that the evidence was insufficient

because the testimony of the state's witnesses was incredible, as each of the

primary witnesses had extensive criminal histories, had an incentive to testify on

behalf of the prosecution in the hope of limiting their liability for their own

criminal acts, and gave inconsistent testimony in different proceedings. Moreover,

he argues, this testimony was not supported by DNA or fingerprint evidence.[2]

Corse presented these arguments to the Appellate Division, which considered and

rejected this claim on the merits. Accordingly, this claim is properly exhausted.

### A. Established Federal Law

"[T]he Due Process Clause protects the accused against conviction except

---

[2] Corse also asserts that the evidence was insufficient to convict him of the crime of criminal possession of the .380 automatic gun with the intent to use it unlawfully, because even if witness Alexander was to be believed in his claim that the defendant handed the gun to the shooter, defendant did not *know* that Cason intended to shoot anybody. The jury may have agreed, as it found Corse not guilty on Count 1. As Corse was not convicted on this charge, this challenge is moot.

upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Parker v. Matthews, 132 S. Ct. 2148, 2152, 183 L. Ed. 2d 32 (2012), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). A federal habeas court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " Cavazos v. Smith, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam* ) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)). Federal deference to the jury's findings includes "assessments of the weight of the evidence or the credibility of witnesses." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996); see also United States v. Brooker, 526 F. App'x 82, 84 (2d Cir. 2013) (summary order) ("All issues of credibility, including the credibility of a cooperating witness, must be resolved in favor of the jury's verdict" (internal quotation marks and citations omitted)). When considering the legal sufficiency of the evidence, the court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor, and, in doing this, must look to state law to determine the elements of the crime." Gutierrez v. Smith, 702 F.3d 103, 113 (2d Cir. 2012), quoting Fama v.

36

Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000) (internal quotation marks omitted).

## B. State Court Decisions

At the conclusion of the People's case, the trial court denied without comment Corse's motion for a trial order of dismissal related to the elements of the charge for possession of the .380 semi-automatic gun and as to the witnesses' credibility. Corse renewed his motion at sentencing, where it was also denied without explanation. On appeal, the Appellate Division stated: "Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to prove the defendant's guilt beyond a reasonable doubt. . . . Contrary to the defendant's contention, the jury could reasonably find that the testimony of certain witnesses was not incredible or unreliable." Corse, 73 A.D.3d at 1209, citing People v. Danielson, 9 N.Y.3d 342 ("A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt.'").

## C. Analysis

This Court has thoroughly reviewed the evidence presented at trial and the Appellate Court's decision and finds that the state courts followed clearly established federal law and reasonably applied it to the evidence adduced at trial.

37

Corse argues that the witnesses against him were unreliable and incredible because they had self-serving motives to lie and had extensive criminal histories. However, these incentives and the past criminal histories were clearly and exhaustively revealed at trial and available to the jury in determining the credibility of the witnesses. The jury heard that Glaudin was a known drug dealer, gun trafficker, robber, and burglar; and they knew that he had a cooperation agreement with the Nassau County District Attorney's Office, which he had violated. Moreover, Defense Counsel's summation highlighted the inconsistencies in Glaudin's testimony about Corse's incriminating statements. The jury also heard about Alexander's criminal history and that he was on parole at the time of the incident and failed to immediately report it to his parole officer. They learned that he gave inconsistent statements about the details of the incident on October 21, 2006 and that he was likely intoxicated at the time of the shooting. Defense Counsel also highlighted these facts in his closing argument. The jury thus had every opportunity to assess the credibility of the witnesses.

This Court finds that a rational jury, weighing the testimony and credibility of the witnesses, could have found beyond a reasonable doubt that Corse was guilty of the crimes of which he was convicted. See, e.g., <u>Gruttola v. Hammock</u>, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony). The Appellate Division applied this same standard and reached the same

conclusion. This decision was neither contrary to nor an unreasonable application of established federal law. Accordingly, Corse's sufficiency of the evidence claim is denied.

## VI. Excessive Sentence

Corse argues that his cumulative sentence is unduly harsh and excessive, although he acknowledges that "this sentence is within the statutory limits" prescribed by New York law. (Appellate Brief at 56.) He states that he had been offered a plea deal of 12 years and argues that the cumulative incarceratory sentence of 14-17 years that he received after trial is "quite disproportional to the offer" and represents punishment for exercising his constitutional right to a trial by jury. (Appellate Brief at 56-57.) This claim is properly exhausted, as it was raised on appeal and denied by the Appellate Division.

To the extent that Corse asserts an excessive sentence claim under the Eighth Amendment, this claim is precluded on federal habeas review when the sentence falls within the established statutory range for the conviction for which it was imposed. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.").

Corse also suggests that the higher sentence imposed after trial, relative to the plea offer, infringed his Sixth Amendment right to trial by jury. The Supreme Court has held that plea negotiations that impose difficult choices on defendants

39

and "may have a discouraging effect on the defendant's assertion of his trial rights," do not constitute a constitutional violation. Corbitt v. New Jersey, 439 U.S. 212, 220 (1978) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) ("[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.") and Chaffin v. Stynchcombe, 412 U.S. 17, 31 (1973)). Accordingly, the Court finds no grounds for habeas relief on the excessive sentence claim.

## VII. Ineffective Assistance of Appellate Counsel

The petition asserts the four claims Corse raised in his appellate brief and then, conversely, also incorporates his state writ of error *coram nobis* in which he argued that appellate counsel was ineffective for raising those very issues and for failing to raise four additional issues. Corse's *coram nobis* petition argued that appellate counsel should have advanced the following four issues on appeal: that (1) the trial court lacked jurisdiction over the accusatory instrument, which (2) was preserved for appellate review by trial counsel's January 6, 2008 omnibus motion; that (3) the trial court erred under People v. Molineaux, 168 N.Y. 264 (1901), in allowing the admission of references to uncharged activity and evidence used to bolster the testimony of prosecution witnesses; and that (4) the trial court erred in not discussing jury notes with defense counsel. This claim was unexhausted when Corse initially filed the instant federal petition, but he thereafter resented his

40

ineffective assistance of appellate counsel claim, including the separate factual claims made in support of this allegation, to the state court in his petition for a writ of error *coram nobis*.

### A. Established Federal Law

The established federal law regarding the effectiveness of counsel was clearly set out in Strickland v. Washington, 466 U.S. 668 (1984) (petitioner must show that counsel's performance "fell below an objective standard of reasonableness" and that the defendant was actually prejudiced by counsel's deficient performance, such that "but for counsel's unprofessional errors, the result of the proceeding would have been different") and applies to claims regarding the effectiveness of appellate counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986) (applying the Strickland standard to evaluate a claim for ineffective assistance of appellate counsel); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992) ("[O]ur Circuit has also adopted the Strickland two-prong test in assessing the effectiveness of appellate counsel.") A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Smith v. Robbins, 528 U.S. 259, 285, 288 (2000). In order to meet the first prong of Strickland, Corse must demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were

41

clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Appellate counsel is not required to bring every non-frivolous issue requested by the defendant. Jones v. Barnes, 463 U.S. 745, 754 (1983); accord, e.g., Smith v. Murray, 477 U.S. at 536 ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.").

### B. State Court Decisions

In this case, the Appellate Division cited Jones v. Barnes, and found that Corse "failed to establish that he was denied the effective assistance of appellate counsel," Corse, 94 A.D.3d at 906. In Jones, the United States Supreme Court established the principle that appellate counsel need not "raise every 'colorable' claim suggested by a client." 463 U.S. at 754. By citing this case, the Appellate Division signaled its reliance on clearly established federal law in denying Corse's claim.

### C. Analysis

In considering this claim, this Court reviewed appellate counsel's brief and the additional claims Corse raised in his writ of error *coram nobis* that he argues should have been raised on appeal and finds that the Appellate Division's conclusion was not contrary to or an unreasonable application of federal law. The claims raised by appellate counsel on direct review were solid and significant, whereas the claims Corse belatedly asserted that counsel should have raised are

42

not.

That appellate counsel's decision to raise the original four claims was sound is apparent in Corse's own application for federal habeas relief, in which he raises these very same issues. Although ultimately unsuccessful, each of these claims was properly exhausted at trial and received specific consideration by the Appellate Court on initial appellate review. On federal habeas review, those very same claims served as the basis for Corse's claims challenging the constitutionality of his conviction and were carefully considered by this Court. Meanwhile, the new issues Corse faulted appellate counsel for failing to raise were no more viable. There appear to have been no grounds for challenging the trial court's jurisdiction over the superceding indictment under which Corse and co-defendant Brandon Howard were charged, even if, as Point Two of the *coram nobis* petition asserts, this issue was preserved for appellate review by trial counsel's January 6, 2008 omnibus motion.

The *coram nobis* petition also argued that appellate counsel was ineffective for failing to raise claims related to alleged Molineaux violations. These issues related to Glaudin's testimony about his tape-recorded conversations with Brandon Howard were raised at trial, in a lengthy objection by Defense Counsel during and at the conclusion of Glaudin's testimony. At Defense Counsel's insistence, at the conclusion of the jury charges, the court instructed the jury not to consider evidence of other uncharged crimes for the purpose of proving that the defendant

43

had a propensity to commit the charged crimes. (Trial Tr. at 1708-1709.) Thus, the curative instruction trial counsel requested was given. Appellate counsel would have had to show that "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985). Even if the Molineaux claim was preserved for appellate review, appellate counsel's decision to focus on the admission of more prejudicial portions of Glaudin's testimony may have been a strong strategic choice.

Finally, Corse's claim in his *coram nobis* petition suggesting that appellate counsel should have challenged the conviction on the basis of a violation of New York's Criminal Procedure Law § 310.30 is without merit. This statute provides that if "[a]t any time during its deliberation," a jury requests further instruction or information, "the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper." N.Y. Crim. Proc. Law § 310.30 (McKinney). The first note was delivered prior to the start of deliberations and the question, whatever it may have been, was not renewed after the court charged the jury. Thus, it does not fall within the ambit of § 310.30. The second note was read into the record in the presence of the jury and counsel and the defendant. Thereafter, counsel for the people and the

44

defendant consulted with the court off the record, and the court responded to the note on the record. This procedure comported with the requirements of § 310.30, and thus any appeal on this ground would have been futile.

This court finds no evidence that appellate counsel's strategic decisions as to which issues to raise on appeal was in any way deficient. Thus, the state court's denial of Corse's claim related to the effectiveness of appellate counsel comports with established federal law and this claim may not serve as the basis for habeas corpus relief.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus is denied. The Clerk of Court is directed to close the case. Because Corse has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/s/ USDJ STERLING JOHNSON, JR.
Sterling Johnson, Jr., U.S.D.J.

Dated: July *14*, 2016
Brooklyn, New York